L9UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF CSS VIRGINIA, LLC, AS OWNER AND OPERATOR OF THE M/V CSS VIRGINIA, OFFICIAL NO. 1065520, AND CARLINE MANAGEMENT COMPANY, INC. | CIVIL ACTION<br><br>NO. 20-71-BAJ-SDJ |

_____

## **ORDER**

Before the Court is a Motion to Compel (R. Doc. 23), filed on October 7, 2020, by Claimant Jackson Jenkins ("Jenkins"). In his Motion to Compel, Jenkins seeks an order compelling Carline Management Company, Inc. ("Carline"), and CSS Virginia, LLC ("CSS Virginia"), to provide access to the M/V CSS ALBEMARLE for taking certain measurements aboard the vessel, as well as to any recording equipment and electronically stored information on the M/V CSS ALBEMARLE.[1] Complainants Carline and CSS Virginia oppose Jenkins's Motion to Compel, filing an opposition on October 27, 2020 (R. Doc. 24). For the reasons herein, Jenkins's Motion to Compel is **denied in part** and **denied without prejudice in part**.

**I.    Background**

Claimant Jenkins, captain on board the M/V CSS VIRGINIA, a vessel owned by CSS Virginia, was injured when he was disembarking from the vessel during a crew change.[2] As alleged by Jenkins, "for the crew to exit the vessel, they were forced to climb over a pipe railing because no accommodation ladder was provided."[3] While doing so, Jenkins "was advised" by an

---

[1] The Court notes that Jenkins spells the name of the vessel "ALBERMARLE" while Carline and CSS Virginia spell it "ALBEMARLE."  The Court, unless quoting Jenkins, will use the spelling "ALBEMARLE" but notes that either spelling refers to the same vessel.
[2] R. Doc. 23-1 at 1.
[3] *Id*.  The Court notes that Carline and CSS Virginia, in their Opposition, disagree with this assertion, claiming it incorrect because "a stepladder was stored aboard the CSS VIRGINIA and available for use by her crew."  R. Doc. 24 at 1-2.

unidentified person that he "could grab onto an object that appeared to be attached to the side of a small building located on the dock."[4] However, when Jenkins grabbed the object for support, "it gave way, causing [Jenkins] to lose his balance and fall onto the dock," injuring his neck, back, and left knee.[5] "Immediately prior" to the docking and crew change of the M/V CSS VIRGINIA, Jenkins claims that the M/V CSS ALBERMALE, identified by Jenkins as "a sister ship"[6] to the M/V CSS VIRGINIA, had made a crew change at the same location where Jenkins was injured.[7]

On July 27, 2020, Jenkins submitted requests for production to Carline, seeking 1) production of "the CSS ALBERMARLE for inspection"; 2) "access to all video cameras and video/audio recording equipment located on board the CSS ALBERMARLE on August 8, 2019 for the purpose of viewing and obtaining information taken or stored that day"; and 3) "access to all electronically stored information from the CSS ALBERMARLE for the purpose of viewing and obtaining information therefrom on the day of the incident."[8] Carline and CSS Virginia responded on August 6, 2020, objecting to all requests. Jenkins then filed the instant Motion to Compel.[9]

---

[4] R. Doc. 23-1 at 1.

[5] *Id.* Carline and CSS Virginia again take issue with this interpretation of the facts, identifying the "object" as a magnetic light and asserting that Jenkins, "who has been operating tug boats for forty-eight (48) years, has not explained why he believed a light fixture was a proper handhold for disembarking a vessel." R. Doc. 24 at 2.

[6] The Court notes that Jenkins has failed to define this term in his pleading. As such, the Court, will here interpret it to mean that the vessels are owned by the same entity. *See Havenbedrijf Rotterdam N.V. v. Nat'l Chem. Carriers Ltd. Co.*, No. 18-6893, 2019 WL 4415250, at *1 (E.D. La. Sept. 16, 2019) (additional vessel owned by the defendant identified as "sister ship" to vessel involved in the accident forming the basis for that litigation); Peter Soon Kwang Koh & Angela Lim Ai Lian, Provisional Remedies in Admiralty Singapore, 4 U.S.F. Mar. L.J. 269, 275 (1992) ("Sometimes it may not be convenient or practical to arrest the vessel involved in the claim in question. In such cases, a claimant may consider attaching other property of the shipowner, including more importantly, the arrest of what is commonly known as a 'sister ship'"). This interpretation is supported by Carline and CSS Virginia's characterization of the M/V CSS ALBEMARLE as "a completely different vessel in CMC's fleet." R. Doc. 24 at 2.

[7] R. Doc. 23-1 at 1.

[8] R. Doc. 23-2 at 3.

[9] Although Jenkins does not detail the efforts made by the parties to resolve their discovery conflicts, counsel for Jenkins does certify "that a discovery conference was held as required by Fed. R. Civ. P. Rule 37(a)(1)" but that "Court action is required to resolve these issues." R. Doc. 23 at 1.

**II.     Law and Analysis**

    **A.     Legal Standard**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016), *quoting Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010).

Federal Rule of Civil Procedure 34 allows a party to request production or inspection of "any designated documents or electronically stored information" as well as "any designated tangible things." Fed. R. Civ. P. 34(a)(1)(A)-(B). Rule 34 also allows a party to request permission for "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). However, any such request "must describe with reasonable particularity each item or category of items to be inspected" and "must specify a reasonable time, place, and manner for the inspection and for performing the related acts." Fed. R. Civ P. 34(b)(1)(A)-(B).

The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2, *quoting Mirror Worlds Techs., LLC v. Apple Inc.*, No. 13-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.*, *quoting Mirror Worlds*, 2016 WL 4265758, at *1. *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citation omitted).

**B.    Analysis**

As stated above, in the instant Motion to Compel, Jenkins seeks an order from the Court compelling Carline and CSS Virginia to comply with the following three discovery requests: (1) produce the M/V CSS ALBEMARLE "for inspection"; (2) provide access to all video cameras and video/audio recording equipment located on the M/V CSS ALBEMARLE; and (3) provide

access to electronically stored information from the M/V CSS ALBEMARLE.[10] The Court addresses each request, in turn, below.

### 1.   Production of the M/V CSS ALBEMARLE

Jenkins's first request is for production of the M/V CSS ALBEMARLE "for inspection."[11] According to his Motion to Compel, Jenkins seeks access to the M/V CSS ALBEMARLE "to take measurements to determine the heights and distance of the vessel compared to Stone's dock railing."[12] Carline and CSS Virginia objected to this request on the grounds "that it is not the vessel which [Jenkins] alleges was involved in or he was disembarking from at the time of this alleged accident; is not the vessel to which [Jenkins] was assigned at the time of his alleged accident; is unduly burdensome; and seeks an inspection which is irrelevant and/or immaterial to this matter…"[13] In addition, after noting that the CSS ALBEMARLE "is a completely different vessel from the CSS VIRGINIA," Carline and CSS Virginia argue that "Jenkins has failed to show how measuring the heights and distances of a completely unrelated vessel at the Stone dock over a year after the alleged accident would make any fact surrounding his claims more or less probable."[14] The Court agrees.

In his Motion to Compel, Jenkins fails to assert how taking measurements of a completely different vessel, one that Jenkins has not even alleged is of a similar type to the M/V CSS VIRGINIA, would be relevant to the instant litigation. And the Court is at a loss to understand same. The Court finds that Jenkins has not met his burden to show that this request falls within the scope of Rule 26.

---

[10] R. Doc. 23-1 at 2-3.
[11] *Id.* at 2.
[12] *Id.* At the time of the incident at issue here, the M/V CSS VIRGINIA was docked at John W. Stone Oil Distributors, LLC's fuel dock. R. Doc. 23-1 at 1.
[13] R. Doc. 23-1 at 2.
[14] R. Doc. 24 at 4.

In addition to their relevance objection, Carline and CSS Virginia also object to the production of the M/V CSS ALBEMARLE as "unduly burdensome."[15] According to Carline and CSS Virginia in their Opposition, "[t]he CSS ALBEMARLE is a fully-crewed, working vessel," an inspection of which "would require, at a minimum, that Complainants disrupt and delay her voyage, and halt operations aboard the vessel so that Jenkins' attorney and liability expert can board the vessel, take measurements and photographs, and inspect her audio-visual recording equipment."[16] Additionally, "Complainants would also incur the expense of sending its attorney(s) to the inspection site, as well as dedicating additional employees or crew members to the inspection to ensure everyone's safety."[17]

The Court, again, agrees with Carline and CSS Virginia.  Production of an active commercial vessel that was in no way involved in the alleged incident is unduly burdensome here, particularly when Carline and CSS Virginia have already made the M/V CSS VIRGINIA, the vessel Jenkins was disembarking when the alleged incident occurred, available for inspection.[18] To this end, Jenkins, in his Motion to Compel, cites to no authority indicating that production of commercial vessels not involved in the incident at issue in the litigation has been determined to fall within the purview of Rule 26. As such,  the Court will not compel Carline and CSS Virginia to produce the M/V CSS ALBEMARLE, and this request by Jenkins is denied.

### 2.    Production of Cameras and Recording Equipment

Jenkins's second request is for "access to all video cameras and video/audio recording equipment located on board the CSS ALBERMARLE on August 8, 2019."[19]  Carline and CSS

---

[15] R. Doc. 23-1 at 2.
[16] R. Doc. 24 at 5.
[17] *Id.*
[18] This inspection took place on September 11, 2020.  R. Doc. 24 at 2.
[19] R. Doc. 23-1 at 3.

Virginia again object to this request as "irrelevant and/or immaterial to this matter," in addition to referencing their objections made to the prior request that the M/V CSS ALBEMARLE is not the vessel involved in the accident here at issue.[20] They further question the relevance of this request, arguing that "[n]othing aboard the CSS AMBEMARLE, or captured on her recording devices, would make any fact surrounding Jenkins' alleged accident more or less probable."[21]

Once again, Jenkins fails to explain the relevance of providing access to the recording equipment to the current case, particularly in light of his request, discussed below, for access to all electronically stored information from the CSS ALBEMARLE, presumably the product of this recording equipment. Jenkins also has in no way explained his need for access to this equipment itself, and, therefore, has failed to show it falls within the scope of Rule 26.

As with production of the M/V CSS ALBEMARLE, Carline and CSS Virginia also object to production of all of its recording equipment as "overly broad and unduly burdensome."[22] Per Carline and CSS Virginia, Jenkins' request "to inspect all video and recording equipment aboard the CSS ALBEMARLE" "is clearly overly broad and falls well outside the scope of his specific claims."[23] The burdensome nature of Jenkins's request, which, according to Carline and CSS Virginia, necessarily would include production of the vessel itself,[24] is discussed above and would be applicable to this request as well.

In addition, the Court also finds this request overly broad in that it in no way limits the video cameras and video/audio recording equipment aboard the M/V CSS ALBEMARLE to which

---

[20] *Id.*
[21] R. Doc. 24 at 4.
[22] R. Doc. 23-1 at 3.
[23] R. Doc. 24 at 5.
[24] As asserted by Carline and CSS Virginia, inspection of the M/V CSS ALBEMARLE "would require, at a minimum, that Complainants disrupt and delay her voyage, and halt operations aboard the vessel so that Jenkins' attorney and liability expert can board the vessel, take measurements and photographs, and inspect her audio-visual recording equipment." R. Doc. 24 at 5.

Jenkins seeks access. Per Rule 34, any such request "must describe with reasonable particularity each item or category of items to be inspected,"[25] which Jenkins's request fails to do here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018) ("The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not…. All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)."). As written, to the Court, this request encompasses any recording equipment aboard the vessel, including that in parts of the ship unrelated to anything involving the Stone dock, which is the only potential tie between the two vessels in this litigation. Because the necessity of this request has not been shown, and because the request is overly broad and not proportional to the needs of the case, it is denied.

### 3. Production of Electronically Stored Information

Finally, Jenkins seeks "access to all electronically stored information from the CSS ALBERMARLE for the purpose of viewing and obtaining information therefrom on the day of the incident."[26] Per Jenkins, "[p]artial videos were produced by Carline showing the M/V CSS ALBERMARLE's crew embarking upon the vessel"; however, "none were produced showing the crew disembarking the vessel," which is the activity during which Jenkins was injured on the M/V CSS VIRGINIA.[27] Jenkins "believes Carline and CSS Virginia are in possession of vast amounts of relevant video footage from the day of the incident taken from the M/V CSS ALBERMARLE which has not been produced."[28] Jenkins, however, does not state the reason for this belief.

---

[25] Fed. R. Civ. P. 34(b)(1)(A).
[26] R. Doc. 23-1 at 3.
[27] *Id.* at 2.
[28] *Id.*

Carline and CSS Virginia again object to this request, arguing that it is overly broad and unduly burdensome and seeks irrelevant information, and again referencing their objections made to Jenkins's first request that the M/V CSS ALBEMARLE was in no way involved in the incident at issue here.[29] Carline and CSS Virginia, in their Opposition, further argue that "the CSS ALBEMARLE and her crew were completely uninvolved in Jenkins' alleged accident" and that "Jenkins provides no basis or evidence for this unfounded allegation" regarding the amount of video footage available from the CSS ALBEMARLE.[30] They continue that "the means by which the CSS ALBEMARLE's crew was able to, or decided to, perform a crew change at the Stone dock has no bearing on how the CSS VIRGINIA's crew was to, or could have, disembarked."[31]

According to Jenkins, however, he is requesting said information "for the purpose of viewing and obtaining information captured from the day of the incident, August 8, 2019" and notes that the M/V CSS ALBEMARLE, which allegedly made a crew change at the same location of Jenkins's alleged incident, "was equipped with video cameras, which show how the crew of the M/V CSS ALBERMARLE climbed over the railing where Claimant's incident occurred."[32] Jenkins, therefore, appears to the Court to be attempting to make a comparison of the disembarking of the two vessels.

The Court finds that, as drafted, Jenkins's request, which is limited neither by time nor by the type of electronically stored information requested, is overly broad. First, it contains no time limitations, so while, in his Motion to Compel, Jenkins states that he wants this information "for the purpose of viewing and obtaining information captured from the day of the incident, August 8, 2019," he fails to limit his request for information to even that date, though the Court notes that

---

[29] *Id.* at 3.
[30] R. Doc. 24 at 4.
[31] *Id.*
[32] R. Doc. 23-1 at 1-2.

requesting all data from that day also likely would be overly broad as well. *See Lopez*, 327 F.R.D. at 575 (a request for "all documents and records…fails to set forth with reasonable particularity the items or category of items sought for the responding party's identification and production of responsive documents"). Similarly, Jenkins seeks "all electronically stored information from the CSS ALBERMARLE," which, as written, could include, *e.g.*, navigational information or any other amount of irrelevant information. Jenkins's request does not set forth the information he is seeking "with reasonable particularity" and at this point, must be denied.

However, the Court finds it noteworthy that "Complainants have produced all video clips from the CSS ALBERMARLE which show her crew boarding the vessel in response to a prior discovery request."[33] Per Carline and CSS Virginia, "[t]here is no additional video to produce."[34] Thus, it does not appear to the Court that production of any additional video clips would be overly burdensome, if it could be demonstrated that they fall within the permissible scope of discovery. The Court, therefore, will deny this particular request without prejudice, granting Jenkins one more opportunity to seek this information. The Court strongly encourages the parties to work together to reach an amicable resolution of this issue without further Court involvement.

### III. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Jenkins's Motion to Compel (R. Doc. 23) is **DENIED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Jenkins's first two requests—for production of the CSS ALBEMARLE and for access to all video cameras and video/audio recording

---

[33] R. Doc. 24 at 4-5.
[34] *Id.* at 5. The Court notes that it is unclear what Carline and CSS Virginia mean by this statement—whether they believe there is no additional recordings to produce pursuant to a valid discovery request, or whether they have no other recordings from the M/V CSS ALBEMARLE. At this time, the Court will not construe this as a statement that no additional recordings exist.

equipment onboard the CSS ALBEMARLE—are **denied**. Jenkins's third request—for access to all electronically stored information from the CSS ALBEMARLE—is **denied without prejudice**.

Signed in Baton Rouge, Louisiana, on January 20, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**